ACCEPTED
01-15-00118-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/27/2015 11:11:21 AM
CHRISTOPHER PRINE
CLERK

<u>No. 01-15-00118-CR</u>
In the
Court of Appeals
For the
First District of Texas
At Houston

———————◆———————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/27/2015 11:11:21 AM

CHRISTOPHER A. PRINE
Clerk

No. 1311655
In the 185th District Court
Of Harris County, Texas

———————◆———————

SANTOS CRUZ-ESCALANTE
*Appellant*
V.
THE STATE OF TEXAS
*Appellee*

———————◆———————

STATE'S APPELLATE BRIEF

———————◆———————

DEVON ANDERSON
District Attorney
Harris County, Texas

KATIE DAVIS
Assistant District Attorney
Harris County, Texas
State Bar Number: 24070242
davis_katie@dao.hctx.net

CHRISTOPHER HANDLEY
KELLI JOHNSON
Assistant District Attorneys
Harris County, Texas

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809

ORAL ARGUMENT WAIVED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, the State waives oral argument since it was not requested by appellant. But the State will present argument if this Court deems it necessary.

## IDENTIFICATION OF THE PARTIES

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Katie Davis**—Assistant District Attorney on appeal

**Christopher Handley; Kelli Johnson**—Assistant District Attorneys at trial

*Appellant or Criminal Defendant:*

**Santos Cruz-Escalante**

*Counsel for Appellant:*

**David Garza**—Counsel on appeal

**Ricardo Gonzalez; Marco Gonzalez**—Counselors at trial

*Trial Judge:*

**Honorable Michael Wilkinson**— Visiting Judge of the 185th District Court

# TABLE OF CONTENTS

                                                                                                                    Page

STATEMENT REGARDING ORAL ARGUMENT ....................................................... i

IDENTIFICATION OF THE PARTIES ................................................................ i

TABLE OF CONTENTS.......................................................................................ii

INDEX OF AUTHORITIES ...............................................................................iii

STATEMENT OF THE CASE ..............................................................................1

STATEMENT OF FACTS ....................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................3

REPLY TO APPELLANT'S SOLE POINT OF ERROR...........................................3

    I.    Standard of Review and Applicable Law..................................................5

    II.    The appellant failed to preserve his complaint for appellate review. ............6

    III.  The trial court did not abuse its discretion in limiting the appellant's cross-examination. ........................................................................................ 10

    IV.  The appellant was not harmed by the trial court's limitation of his cross-examination. ........................................................................................ 14

CONCLUSION ................................................................................................. 18

CERTIFICATE OF SERVICE AND COMPLIANCE ........................................... 19

# INDEX OF AUTHORITIES

## CASES

*Acevedo v. State*,
255 S.W.3d 162 (Tex. App.—
San Antonio 2008, pet. ref'd) ............................................................. 9

*Apolinar v. State*,
155 S.W.3d 184 (Tex. Crim. App. 2005) ............................................ 6

*Chambers v. State*,
866 S.W.2d 9 (Tex. Crim. App. 1993) ............................................... 5

*Delaware v. Van Arsdall*,
475 U.S. 673 (1986) ........................................................................... 5

*Harwood v. State*,
961 S.W.2d 531 (Tex. App.—
San Antonio 1997, no pet.) ................................................................ 8

*Ho v. State*,
171 S.W.3d 295 (Tex. App.—
Houston [14th Dist.] 2005, pet. ref'd) ............................................... 7

*Hodge v. State*,
631 S.W.2d 754 (Tex. Crim. App. [Panel Op.] 1982) ...................... 5

*Johnson v. State*,
419 S.W.3d 665 (Tex. App.—
Houston [1st Dist.] 2013, pet. ref'd) .................................................17

*Lagrone v. State*,
942 S.W.2d 602 (Tex. Crim. App. 1997) ......................................... 10

*Lape v. State*,
893 S.W.2d 949 (Tex. App.—
Houston [14th Dist.] 1994, pet. ref'd) ..........................................12, 13

*Linney v. State*,
401 S.W.3d 764 (Tex. App.—
Houston [14th Dist.] 2013, pet. ref'd) ........................................5, 9, 17

*Mays v. State*,
285 S.W.3d 884 (Tex. Crim. App. 2009) .......................................... 7

*Motilla v. State*,
  78 S.W.3d 352 (Tex. Crim. App. 2002) ................................................... 16

*Potier v. State*,
  68 S.W.3d 657 (Tex. Crim. App. 2002) ...................................................15

*Rankin v. State*,
  41 S.W.3d 335 (Tex. App.—
  Fort Worth 2001, pet. ref'd) ...................................................................17

*Recer v. State*,
  821 S.W.2d 715 (Tex. App.—
  Houston [14th Dist.] 1991, no pet.) ....................................................... 12

*Reyna v. State*,
  168 S.W.3d 173 (Tex. Crim. App. 2005) .............................................6, 7, 8

*Shepherd v. State*,
  273 S.W.3d 681 (Tex. Crim. App. 2008) ................................................... 6

*State v. Melcher*,
  153 S.W.3d 435 (Tex. Crim. App. 2005) .................................................... 6

*Stults v. State*,
  23 S.W.3d 198 (Tex. App.—
  Houston [14th Dist.] 2000, pet. ref'd) .................................................... 12

*Thomas v. State*,
  669 S.W.2d 420 (Tex. App.—
  Houston [1st Dist.] 1984, pet. ref'd) ...................................................12, 13

*Valtierra v. State*,
  310 S.W.3d 442 (Tex. Crim. App. 2010) ................................................... 6

*Walters v. State*,
  247 S.W.3d 204 (Tex. Crim. App. 2007) ............................................. 14, 15

*Woods v. State*,
  152 S.W.3d 105 (Tex. Crim. App. 2004) ................................................. 10

## STATUTES

Tex. Code Crim. Proc Ann.
  art. 57.01 (4) (West 2010) ......................................................................1

TEX. CODE CRIM. PROC. ANN.
  art. 57.02(h) (West supp. 2014) ...........................................................1

TEX. CODE CRIM. PROC. ANN.
  art. 57.03(d) (West 2010) ...................................................................1

RULES

TEX. R. APP. P. 33.1.....................................................................6, 9

TEX. R. APP. P. 33.1(a)(1)(A)........................................................7

TEX. R. APP. P. 33.2.....................................................................6, 9

TEX. R. APP. P. 33.2(c).....................................................................7

TEX. R. APP. P. 39.1............................................................................i

TEX. R. APP. P. 44.2(a)....................................................................14

TEX. R. APP. P. 44.2(b)....................................................................16

TEX. R. APP. P. 9.4(g)........................................................................i

TEX. R. EVID. 103.........................................................................9, 16

TEX. R. EVID. 103(a).........................................................................6

TEX. R. EVID. 103(a)(2).....................................................................7

TEX. R. EVID. 401...........................................................................10

U.S. CONST. amend. VI......................................................................5

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

The State charged the appellant with aggravated sexual assault of a child (CR – 7). The jury found the appellant guilty (CR – 383-85; 4 RR 23). The trial court sentenced him to 20 years in prison (CR – 384-85; 5 RR 35-36). The appellant filed a timely notice of appeal, and the trial court certified that he had the right to appeal (CR – 387-89).

## STATEMENT OF FACTS

During the summer of 2010, Jane[1] lived with her mother, Zenia Morales (3 RR 140). One day, while riding her bike around the complex, Jane ran into the appellant (3 RR 160). Jane knew the appellant because he also lived in the same apartment complex (3 RR 145). The appellant was cleaning his car, and he asked Jane if she wanted a soda (3 RR 160). Jane said yes, and the appellant took her upstairs to his apartment (3 RR 160). In his apartment, the appellant pulled down

---

[1] A person "who has access to or obtains the name, address, telephone number, or other identifying information of a victim younger than 17 years of age may not release or disclose the identifying information to any person who is not assisting in the investigation, prosecution, or defense of the case." TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (West supp. 2014). The term "victim" means a person who was the subject of: "(A) an offense the commission of which leads to a reportable conviction or adjudication under Chapter 62; or (B) an offense that is part of the same criminal episode, as defined by Section 3.01, Penal Code, as an offense described by Paragraph (A)." TEX. CODE CRIM. PROC. ANN. art. 57.01 (4) (West 2010). The release or disclosure of such information to any person is a class C misdemeanor. TEX. CODE CRIM. PROC. ANN. art. 57.03(d) (West 2010). Therefore, the pseudonym "Jane" will be used for the victim in this case.

Jane's pants and underwear and made her lay down (3 RR 47, 160). The appellant put his penis in her anus (3 RR 47-8, 160). Jane felt his penis was first soft and then hard (3 RR 44). It hurt Jane a little bit (3 RR 165). Jane told the appellant that her mom was calling for her, and he let her go (3 RR 47-49, 161-63). Jane was scared to tell her mom (3 RR 164). Jane was six years old at that time (3 RR 66).

In July 2010, Jane went to visit her dad, Marvin Mejia, in New York City (3 RR 66-67). Jane told her sisters what happened to her earlier that summer, and Jane's sisters told Mejia (3 RR 67). Eventually, Jane told Mejia what the appellant did to her (3 RR 67-9). She was upset and emotional while revealing to her father what the appellant did to her (3 RR 69-70). Mejia had noticed that during her visit, Jane did not seem happy, and her typical demeanor had changed (3 RR 70). Mejia took Jane to the hospital immediately (3 RR 70).

Jane met with Teresa Santos, a forensic interviewer, at the child advocacy center at Montefiore Medical Center in New York City (3 RR 32). Jane told Santos in detail what the appellant did to her in Houston (3 RR 40-50). Jane told Santos that the appellant did something bad to her; she stated that he "put his wiener in my butt." (3 RR 43). Santos noticed that Jane's demeanor changed from happy and active to shy and nervous when she spoke about what the appellant did to her (3 RR 40, 47-48).

Dr. Linda Cahill, a specialist in child abuse pediatrics, examined Jane at the child advocacy center (3 RR 175). *See* (St. Ex. #22). Dr. Cahill found that Jane had cauliflower shaped legions on her genitals (3 RR 179-80). She determined that Jane had contracted the human papilloma virus (HPV), a sexually-transmitted disease (3 RR 180-83). Dr. Cahill was convinced Jane was a victim of sexual abuse based on her disclosure and the medical evidence (3 RR 183).

## SUMMARY OF THE ARGUMENT

The trial court did not abuse its discretion in limiting the appellant's cross-examination of Mejia because the surrounding details of the custody dispute were not relevant to show any potential bias or animus towards the appellant. Additionally, any possible error was waived because the appellant failed to explain why the evidence was relevant and failed to state sufficiently what he would have asked Mejia. Furthermore, the appellant failed to show harm.

## REPLY TO APPELLANT'S SOLE POINT OF ERROR

In the appellant's sole point of error, he argues that the trial court erred in excluding evidence, limiting his cross-examination of witnesses. (App'nt Brf. 9-17). Specifically, the appellant points to his cross-examination of Mejia where the trial court declined to let him question Mejia about the custody dispute for Jane that occurred after the allegations of abuse were made (3 RR 80-82). (App'nt Brf. 10-11).

The following exchange occurred at the bench during the appellant's cross-examination of Mejia:

> MR. RICARDO GONZALEZ: Now, Your Honor, there's – in the offense report where they talk to this man, basically she – there's a custody battle going on.
>
> THE COURT: At what point?
>
> MR. RICARDO GONZALEZ: After his knowledge of this.
>
> THE COURT: Okay. After all this, okay.
>
> MR. RICARDO GONZALEZ: Yes, yes. So they're fighting for custody and they set up a custody hearing. There's a – there was a hearing set to determine –
>
> MS. JOHNSON: Can you whisper?
>
> MR. RICARDO GONZALEZ: Yes. There was a custody hearing to determine where the child was going to be in general. Well, he didn't show up and basically he said he didn't show up because the mother threatened to have him killed.
>
> MR. MARCO GONZALEZ: No, he just – (inaudible).
>
> THE COURT REPORTER: I can't hear you, Marco.
>
> THE COURT: I don't think he wants it on the record.
>
> MR. MARCO GONZALEZ: Okay. So there was a custody hearing.
>
> MS. JOHNSON: Can you whisper?
>
> MR. MARCO GONZALEZ: Okay. Sorry. There was a custody hearing, and, you know, he didn't show up to the custody hearing so she got custody to bring the child back to Texas but he also – she asked the investigator if she could put a protective order against him because he was threatening to kill the mom, so – but

4

THE COURT: That's not coming in here.

MR. RICARDO GONZALEZ: Okay. That's why I approached.

THE COURT: Okay. And my understanding is she's on the witness list also, right?

MR. RICARDO GONZALEZ: Yeah.

THE COURT: No, that's not coming in at this point.

MR. RICARDO GONZALEZ: Okay. All right. Thank you, Your Honor.

(End of discussion at the bench.) (3 RR 80-82).

## I.      Standard of Review and Applicable Law

Criminal defendants have a right to cross-examine witnesses, but the trial court retains wide latitude to impose reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993); *see also* U.S. CONST. amend. VI. "The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission." *Linney v. State*, 401 S.W.3d 764, 772 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982)). The trial court must consider "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Hodge*, 631 S.W.2d at 758.

5

A trial court's decision to exclude evidence will be evaluated for abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably without reference to any guiding principles. *State v. Melcher*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A reviewing court views the evidence in the light most favorable to the trial court's ruling. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

## II. The appellant failed to preserve his complaint for appellate review.

The appellant argues that the trial court erred in limiting his cross-examination of Mejia. (App'nt Brf. 9-17). Specifically, the appellant argues that details surrounding a custody dispute between Mejia and Morales could have provided a motive for the allegations against the appellant. (App'nt Brf. 10-14). But the appellant failed to preserve his complaint for review.

To preserve error for the exclusion of evidence, the appellant was required to object, obtain a ruling from the trial court (or object to the trial court's refusal to rule), and make an offer of proof. *See* TEX. R. EVID. 103(a); *Reyna v. State*, 168 S.W.3d 173, 176–77 (Tex. Crim. App. 2005); *see also* TEX. R. APP. P. 33.1; TEX. R. APP. P. 33.2. The appellant was also required to state the reason for his desired ruling "with sufficient specificity to make the trial court aware of the complaint." TEX. R.

6

APP. P. 33.1(a)(1)(A); *Reyna*, 168 S.W.3d at 177 (noting that at the earliest opportunity the complaining party must have done everything necessary to bring to the trial court's attention the evidence rule or statute in question and its precise and proper application to the evidence in question).

Although the appellant informed the trial court of his desire to question Mejia about the custody dispute, he failed to explain why the evidence was relevant and failed to state with sufficient specificity what he would have asked Mejia (3 RR 80-82). *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (noting that an offer of proof may be in question and answer format, or may consist of a concise statement by counsel, but when in the form of a statement, the offer of proof "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible."); *Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("When a trial court denies a defendant the opportunity to elicit certain specific responses from a State's witness, error is preserved by (1) calling the witness to the stand outside the presence of the jury and asking specific questions or (2) making an offer of proof that demonstrates what questions would have been asked and the expected answers to those questions."); TEX. R. EVID. 103(a)(2); *see also* TEX. R. APP. P. 33.2(c) (laying out the procedure to file a formal bill).

Additionally, the appellant failed to show how Mejia would have answered (3 RR 80-82). *See Harwood v. State*, 961 S.W.2d 531, 538 (Tex. App.—San Antonio 1997, no pet.) (holding that the appellant's claim the trial court erred in excluding evidence was not properly preserved for appeal, since nothing in bill of exceptions showed how the witness would have answered question); *Ho*, 171 S.W.3d. at 304 (requiring expected answers in order to preserve error for the exclusion of specific evidence).

Moreover, the appellant failed to assert what legal principle he was relying on (3 RR 80-82). It is not apparent from the record why the appellant wanted to question Mejia about the specific circumstances surrounding the custody dispute (3 RR 80-82). The appellant appears to argue for the first time on appeal that the custody dispute was relevant to show bias and prevented him from presenting a meaningful defense of a false accusation (App'nt Brf. 12-13). But the appellant was required to assert this argument at trial. *Reyna*, 168 S.W.3d at 177-78 (noting that the appellant is required to state the grounds for the desired ruling so that the trial court can have the opportunity to rule upon his rationale).

Furthermore, the appellant did not object to the trial court's exclusion based on his constitutional right to present a defense or under the Confrontation Clause. In fact, the appellant failed to object under any theory after the trial court

8

excluded the testimony (3 RR 80-82).[2] *See* TEX. R. APP. P. 33.1; TEX. R. APP. P. 33.2; TEX. R. EVID. 103. Therefore, the appellant failed to preserve any complaint regarding the trial court limiting his constitutional right to cross-examine witnesses at trial. *See Acevedo v. State*, 255 S.W.3d 162, 173 (Tex. App.—San Antonio 2008, pet. ref'd) ("To preserve denial of a right to confrontation error, one must specifically object based on the Confrontation Clause.").

Finally, although the trial court limited the appellant's cross-examination of Mejia, it did not foreclose the opportunity to ask other witnesses about the custody dispute (3 RR 80-82). The trial court ruled that the details of the custody dispute were "not coming in here" and asked if Morales was on the witness list (3 RR 82). After learning that she was on the list, the trial court reiterated, "that's not coming in at this point." (3 RR 82). But the appellant never attempted to ask Morales about any details of the custody dispute during her cross-examination (3 RR 148-52). Morales testified that Mejia tried to get custody of Jane around the time of the outcry, but the appellant passed her without asking further details (3 RR 151-52). Accordingly, the appellant failed to preserve a complaint for appellate review. TEX. R. APP. P. 33.1; TEX. R. APP. P. 33.2; TEX. R. EVID. 103; *Linney*, 401 S.W.3d at 773-74. Thus, the appellant's sole point of error should be dismissed.

---

[2] After the trial court indicated that the evidence was not coming in "here," the appellant responded, "Okay. That's why I approached." (3 RR 82).

## III. The trial court did not abuse its discretion in limiting the appellant's cross-examination.

Even if the appellant preserved error, the trial court did not err in limiting the appellant's cross-examination of Mejia. The trial court has the discretion to limit the scope of cross-examination "to avoid, *inter alia*, harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997).

The appellant appears to argue that mere evidence of a custody dispute is evidence of animus or bias. (App'nt Brf. 13-15). But without a causal connection between Mejia's custody dispute and potential bias, ill will, or animus towards the appellant, the details were not relevant. *See Woods v. State*, 152 S.W.3d 105, 111–12 (Tex. Crim. App. 2004) (overruling complaint about limited cross-examination when proponent's offer of proof failed to show a nexus between the witness's testimony and his sentence); *see also* Tex. R. Evid. 401.

Evidence of the custody dispute was presented to the jury. Mejia testified that he fought for custody of Jane and that he did not think Morales was a good mother (3 RR 78-79). And, as previously stated, Morales testified that she attended a custody hearing in New York after the allegations were made against the appellant (3 RR 151-52). Thus, the appellant was not prevented from proving this possible basis for a bias.

10

The only evidence the jury did not hear was that Mejia failed to appear at the custody hearing because Morales threatened to have him killed or that Morales asked an investigator for a protective order against Mejia due to threats made to her (3 RR 81-82).[3] But it is unclear from the record how either situation showed any bias, ill will, or animus against the appellant (3 RR 81). Mejia did not know the appellant prior to Jane's outcry (3 RR 146). Morales testified that the appellant merely lived at her apartment complex and that she would see him sometimes when going to her apartment (3 RR 143-45). She had no sexual relationship or friendship with the appellant (3 RR 143-45). Therefore, the specific circumstances surrounding the custody dispute were not relevant.

Moreover, the record reflects that the appellant was free to question Morales regarding her concerns with Mejia during the custody hearing. *See* (3 RR 81-82, 151-52) (informing the appellant that this evidence is not "coming in at this point."). There was no evidence that Mejia knew about her request or exactly what threats were made. Thus, the trial court did not abuse its discretion by limiting Mejia's cross-examination regarding that matter.

Regardless, the jury was aware the custody dispute occurred around the time of the allegations (3 RR 78-79, 151-52). And the appellant was otherwise afforded an opportunity for a thorough and effective cross-examination of Mejia (3

---

[3] The record is unclear whether both Mejia and Morales threatened each other or whether only Mejia threatened Morales or only Morales threated Mejia (3 RR 81-82).

RR 74-82). Therefore, no violation of the appellant's right to confrontation occurred. *See Recer v. State*, 821 S.W.2d 715, 717-18 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (holding that the trial court's limitation of questions to the complainant by the appellant about specific conversations and conduct with the appellant's husband that occurred well before and long after the offense was reasonable because the extent of the relationship had already been established for the jury); *see also Stults v. State*, 23 S.W.3d 198, 204 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (noting that limits to cross-examination do not violate the accused's right to confront a witness as long as (1) the possible bias and motive of the State's witness is clear and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination).

The appellant relies on *Thomas v. State*, 669 S.W.2d 420 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) and *Lape v. State*, 893 S.W.2d 949 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). (App'nt Brf. 13-16). But both cases are distinguishable. Thomas was accused of sexually assaulting his stepdaughter. *Thomas*, 669 S.W.2d at 420. During trial, he sought to admit evidence through testimony of the complainant and her mother that the complainant had made at least one prior false accusation of sexual assault. *Id*. at 422-23. The court of appeals found that the evidence went to the issue of the complainant's credibility, and that

12

the trial court's refusal to allow Thomas to question the complainant on these matters was error. *Id.* at 423.

Similarly, Lape was accused of sexually assaulting his stepdaughter. *Lape*, 893 S.W.2d at 952. His defensive theory was that his estranged wife fabricated the accusation so that she could obtain custody of their son. *Id.* Lape offered, but the trial court excluded, evidence that previous allegations of child abuse dismissed against Lape because his wife admitted that she lied. *Id.* at 957-58. And the trial court excluded the testimony of several witnesses that Lape's wife threatened that she would do whatever it took to get custody of the son on several occasions. *Id.* at 960. The court of appeals held that the trial court abused its discretion by disallowing the evidence because both the prior false allegation and threats clearly showed the wife's mental and emotional state over the custody battle and her motive to lie about Lape. *Id.* at 958, 960-61.

Here, conversely, there was no evidence of false allegations or animus between the appellant and Mejia. Although there was evidence of a custody hearing, no evidence was presented that Mejia made false allegations in the past or threatened to make false allegations to gain custody of Jane (3 RR 78). *Cf. Lape*, 893 S.W.2d at 958-61. In fact, as previously stated, Mejia did not even appear at the custody hearing in order to challenge Morales for Jane's custody (3 RR 81-82). Furthermore, as previously stated, it was unclear whether Morales threatened

Mejia's life or Mejia threatened Morales's or whether they both threatened each other (3 RR 81-82). Thus, the excluded evidence did not clearly establish or support a motive for Mejia to falsify allegations of abuse by the appellant. Therefore, the trial court did not err in limiting Mejia's cross-examination.

## IV. The appellant was not harmed by the trial court's limitation of his cross-examination.

Even if the trial court erred in limiting the cross-examination of Mejia, the appellant failed to show harm. Although errors resulting from admission or exclusion of evidence are generally non-constitutional, the appellant appears to argue constitutional harm because he was prevented from presenting a defensive theory. *See* (App'nt Brf. 15-17); *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *see also* TEX. R. APP. P. 44.2(a) (a reviewing court must reverse due to any constitutional error unless it is determined "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.").

But, as previously stated, both the custody dispute and the hostility between Mejia and Morales were established throughout trial from other evidence. Both Mejia and Morales testified that there was a custody dispute regarding Jane (3 RR 78-79, 151-52). Mejia testified that he did not think Morales was a good mother (3 RR 79). And Santos testified that Jane told her that her mom would hit her (3 RR 54-55).

Any additional testimony from Mejia about the details of the custody dispute was not so vital to the appellant's defense that its exclusion effectively precluded him from presenting a defense. *See Walters*, 247 S.W.3d at 220-22 (finding non-constitutional error when the defendant was prohibited from offering a second 911 recording that offered an explanation for why he shot his brother because he was able to present his defense through his and other witness' testimony).

The appellant presented multiple defensive theories. He argued that Jane's details of the assault were inconsistent between the witnesses, pointing to the differences in her testimony, Santos's testimony and Mejia's testimony (4 RR 9). He argued that he was cooperative with law enforcement because he had nothing to hide; noting that he offered the officer his medical records to show he never had HPV (4 RR 9-12). Finally, he argued about the custody battle between Morales and Mejia (4 RR 13). Because the excluded evidence did not prevent him from presenting a defense, any error was not of constitutional dimension. *See Potier v. State*, 68 S.W.3d 657, 665-66 (Tex. Crim. App. 2002) (holding that although the erroneously excluded evidence was relevant to the appellant's self-defense claim, the exclusion did not prevent him from presenting a defense).

Additionally, the appellant failed to show harm under non-constitutional error. Under Rule 44.2(b) of the Texas Rules of Appellate Procedure, any non-

constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103. If based on the record as a whole there is fair assurance that the erroneous exclusion of evidence either had no influence or only a slight influence on the jury, substantial rights are not affected. *Motilla v. State*, 78 S.W.3d 352, 355-58 (Tex. Crim. App. 2002).

Even if the details surrounding the custody dispute had been admitted to rebut Mejia's credibility, there was substantial evidence to support the appellant's guilt. *See Motilla*, 78 S.W.3d at 358 (noting that the weight of the evidence of the defendant's guilt is also a factor to be considered in a harm analysis). Jane testified in detail that the appellant coerced her into his apartment, pulled down her pants, and penetrated her "middle part"[4] with his "middle part" (3 RR 160-67). She explained that this hurt (3 RR 167). Although Jane only testified about the appellant penetrating her "middle part," there was testimony from both Santos and Mejia that Jane told them he also had penetrated her anus (3 RR 40-48, 69-73). Moreover, Dr. Cahill testified that the distance between a six-year old's vagina and anus would only be about an inch, and could easily have contacted both in one attack (3 RR 192-93).

---

[4] Jane used anatomical dolls to demonstrate that her "middle part" was her vagina, and the appellant's "middle part" was his penis (3 RR 161-62).

Jane provided Santos and Mejia consistent statements regarding her assault by the appellant (3 RR 46-8, 69). Furthermore, Jane identified the appellant in the line-up and court as the man who sexually assaulted her (3 RR 105-111, 165). *See* (St. Ex. #10-11). Finally, Jane's testimony was corroborated by her physical exam that showed she had HPV, a sexually-transmitted disease (3 RR 176-83). *See* (St. Ex. #22). Thus, evidence of guilt was overwhelming. *See Johnson v. State*, 419 S.W.3d 665, 671-72 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding the victim's testimony that the appellant inserted his finger into her vagina itself satisfied the elements of aggravated sexual assault of a child and was sufficient to support a conviction).

Because the trial court's exclusion of the details surrounding the custody dispute neither effectively precluded the appellant from presenting a defense nor substantially injured his rights, any error was harmless. *See Linney*, 401 S.W.3d at 776-77 (holding harmless error when the appellant was not allowed to admit evidence of the victim's behavior of sexual acting out and cutting herself began after boyfriend rejected her); *Rankin v. State*, 41 S.W.3d 335, 346 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding harmless error when the appellant was not allowed to refute the complainant's testimony that she was not a topless dancer because he was still able to challenge her credibility with the testimony of three other witnesses). Thus, the appellant's sole point of error should be overruled.

17

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas


/s/ *Katie Davis*

KATIE M. DAVIS
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

# CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 4,183 words in it; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

David Garza
102 S. Lockwood
Houston, TX 77011
713-926-4604
713-926-0373/fax
David@davidlgarza.com

/s/ _Katie Davis_____

**KATIE M. DAVIS**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

Date: August 27, 2015